IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AGNIESZKA WOJCIK YELVERTON, ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KIRSTJEN M. NIELSEN, SECRETARY, ) <br> SECRETARY, DEPARTMENT OF ) <br> HOMELAND SECURITY, ) <br> TRANSPORTATION SECURITY ) <br> ADMINISTRATION, ) <br> ) <br> Defendant. ) | Case No. |

## COMPLAINT

Plaintiff, AGNIESZKA WOJCIK YELVERTON, by and through her undersigned attorneys files this COMPLAINT against DEFENDANT, KIRSTJEN M. NIELSEN, in her capacity as SECRETARY OF DEPARTMENT OF HOMELAND SECURITY, alleging, as follows:

## INTRODUCTION

This suit claims violation of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990, as amended, and the Family Medical Leave Act of 1993. Plaintiff, a former employee of the Defendant, Transportation Security Administration ("TSA" or "Agency"), located in Chicago O'Hare airport, was subjected to discrimination based on her sex for her high-risk pregnancy, and disability of Sjogren's Syndrome, when her employer failed accommodate her, and terminated her as a result of her leave from work which was caused by her pregnancy and disability, Sjogren's

1

Syndrome.

Plaintiff was officially diagnosed with Sjogren's Syndrome in 2013. Sjogren's Syndrome is an autoimmune syndrome which causes symptoms, including, but not limited to, swollen joints, swollen lymph nodes, dry eyes, rashes, and pain and weakness in joints and arms and legs. These symptoms can and do cause substantial limitations to various everyday activities. In 2015, Plaintiff experienced an increase in the symptoms of her disability, as a result of her becoming pregnant. Plaintiff's pregnancy caused symptoms related to her Sjogren's Syndrome to be exacerbated in frequency and duration, which eventually resulted in Plaintiff needing breaks and absences from work to care for the symptoms and resulting pain.

Beginning in summer of 2015, Plaintiff began a journey down the path towards her pregnancy due date set for February 26, 2016. By the fall of 2015, the exacerbation of Plaintiff's medical condition and its effect on her pregnancy eventually resulted in her requesting to telework to accommodate her medical condition and pregnancy, invoke leave under the Family and Medical Leave Act, and finally, to take a leave of absence from work to treat and care for her symptoms and the high-risk nature of pregnancy until the end of her pregnancy. Plaintiff's disability was disclosed to the Defendant and witnessed by upper management and colleagues, and Plaintiff fully disclosed the nature of her condition, her high-risk pregnancy, and regularly provided medical updates to her employer from her treating physician about her return to duty date, which following multiple assessments from her physician was identified as April 25, 2016, several weeks after her due date.

Until the events giving rise to this complaint, the Defendant never alleged Plaintiff's disability interfered with performance of her position's duties, nor did Plaintiff suffer from any performance or disciplinary issues related to her disability, or otherwise. Moreover, Plaintiff

maintained exceptional performance reviews, and other than her medically supported leave from work due to her medical condition and pregnancy, with a set return to duty date, she had never abused or taken leave from work for an extended period of time.

Despite more than a decade of employment with the Defendant, with only successful performance, the Defendant, having knowledge of Plaintiff's Sjogren's Syndrome, its symptoms, and its effects on her pregnancy, refused her requests to telework, failed to seek out or process her formal request for reasonable accommodation or reassignments to another position. Instead, on March 15, 2016, Defendant terminated the Plaintiff due to her leave from work take to take care for her medical condition and pregnancy.

## PARTIES

1. Plaintiff, AGNIESZKA WOJCIK YELVERTON, is an individual who at all times material to this complaint was an employee of the Defendant at the O'Hare International Airport in Chicago, Illinois within the meaning of the Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and the American with Disabilities Act of 1990.

2. Defendant, ELAINE DUKE, is the Acting Deputy Secretary of the Department of Homeland Security, Transportation Security Administration Agency, and is being sued here in her official capacity as Secretary of Plaintiff's employer.

## JURISDICTION

3. Plaintiff brings this action under the Title VII of the Civil Rights Act of 1964, 28 U.S.C. § 1331 and § 1343, 42 U.S.C. § 2000e-2; Americans with Disabilities Act, 42 U.S.C. § 121101, *et seq*.; the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, *et seq*.; and the Fifth Amendment of the United States Constitution ("deprived of life, liberty, or property, without due process").

4. This Court has jurisdiction pursuant to the following statues:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

    b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over action to secure civil rights extended by the Unite States government.

## ADMINISTRATIVE PREREQUISITES

5. Prior to filing a civil action under Title VII of the Civil Rights Act of 1964 or the Rehabilitation Act of 1973, a federal sector Plaintiff must first exhaust the administrative process set out at 29 C.F.R. Part 1614. Plaintiff received a Final Agency Decisions (FAD) on May 26, 2016, via First Class mail through the United States Postal Service, demonstrating exhaustion of the administrative process. The Plaintiff exercises her appeal right for all matters appealable from her administrative complaints, as described in the stated statutes, and as considered by the Equal Employment Opportunity Commission (EEOC), in exhaustion of the administrative process. All matters prosecuted in this Complaint, related to Title VII of the Civil Rights Act of 1964, the Rehabilitation Act of 1973, and Americans with Disabilities Act, 42 U.S.C. § 121101, *et seq.*, and are intertwined and within the scope of the discrimination charged, and exhausted.

## VENUE

6. Venue lies within the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391 (b) because Plaintiff was employed by the United States Department of Homeland Security, Transportation Security Administration at O'Hare International Airport in Chicago, Illinois in this Judicial District; all of the events giving rise to

this claim occurred in this Judicial District; and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## FACTUAL ALLEGATIONS

7. Plaintiff's employment with the Agency began on July 28, 2002 at Chicago O'Hare International Airport (ORD), Rosemont, Illinois as a Lead Transportation Security Officer (LTSO), F-Band pay schedule.

8. On September 21, 2003, Plaintiff was promoted to a Supervisory Transportation Security Officer (STSO), G-Band pay schedule.

9. On May 2, 2004, Plaintiff was promoted to a Transportation Security Specialist – Assistant Scheduling Operations Officer, H-Band pay schedule.

10. On December 10, 2006, Plaintiff was promoted to a Scheduling Operations Officer (SOO), I-Band pay schedule.

11. On December 5, 2010, Plaintiff was promoted to a Supervisory SOO, J-Band pay schedule. (Alternated title in organization was Program Analyst – Master Scheduling Operations Officer). ORD is considered a security category "X" airport, which for scheduling means having on Supervisory SOO, at least one Assistant SOO, two SOOs, and two to four administrative assistants and program assistants (to support the two SOOs).[1]

12. In 2013, while Plaintiff was a Supervisory SOO, she was diagnosed with Sjogren's

---

[1] A Category X airport, that is an airport that has 100 percent Advanced Technology X-Ray screening at all lanes at all check points and are required to have the equipment to detect explosives. A Category X airport is required to have a high level of staffing for the security of the airport and passengers. See, U.S. Government Accountability Office, TRANSPORTATION SECURITY INFORMATION SHARING: STAKEHOLDERS GENERALLY SATISFIED BUT TSA COULD IMPROVE ANALYSIS, AWARENESS, AND ACCOUNTABILITY U.S. GOVERNMENT ACCOUNTABILITY OFFICE (U.S. GAO)(2011), https://www.gao.gov/products/GAO-12-44.

Syndrome. Sjogren's Syndrome is a disorder of the immune system, which often accompanies other immune system disorders, like rheumatoid arthritis and lupus to cause the severe dry eyes (like there is sand in them) and dry mouth (like it is full of cotton, making it difficult to swallow or speak). People diagnosed with Sjogren's Syndrome often also have one or more of the following symptoms: joint pain, swollen salivary glands, skin rashes or dry skin, vaginal dryness, prolonged fatigue, or persistent dry cough.[2]

13. Agency was first notified of her medical condition in February 2013, when Plaintiff informed Deputy Federal Security Director (DFSD) Art Bell and Assistant Federal Security Director for Screening (AFSD-S) Tania Vasquez of her recent diagnosis and symptoms related to Sjogren's Syndrome including dry eyes, joint pain, fatigue and hives.

14. In 2013, Plaintiff also had several conversations with DFSD Art Bell regarding her Sjogren's Syndrome, specifically surrounding an incident where Plaintiff's vision was temporarily lost from her left eye. Plaintiff consistently provided DFSD Bell with doctor's notes regarding her many appointments required to resolve the temporary loss of vision caused by her Sjogren's Syndrome.

15. On May 14, 2015, Plaintiff's physician notified the Agency that Plaintiff would need to be off sick from May 14, 2015, until May 22, 2015, due to various symptoms related to sinusitis, and further indicated that the Plaintiff suffers from Sjogren's Syndrome which drastically exacerbated the infections due to the strain on her immune system.

16. On May 20, 2015, due to Plaintiff's need for leave as indicated by her physician, Plaintiff submitted a request for leave under the FMLA to Human Resources (HR) Specialist, Ian

---

[2] Sjogren's syndrome, MAYO CLINIC (2017), https://www.mayoclinic.org/diseases-conditions/sjogrens-syndrome/symptoms-causes/syc-20353216.

Fortenbacher, who processed the application to Agency employee, Roger Romano, and then sent the request to DFSD Bell, as Plaintiff's supervisor, for final approval.

17. On or about May 21, 2015, DFSD Art Bell provided the Plaintiff a form to allow her to telework in Plaintiff's position as Supervisory SOO, and approved temporary telework for the Plaintiff or purposes of moving. However, Plaintiff's moving plans fell through and the telework was not utilized by the Plaintiff.

18. Beginning on May 21, 2015, Plaintiff's medical condition necessitated her to utilize leave under FMLA.

19. Plaintiff was approved for a period of continuous leave under FMLA from May 24, 2015, to July 18, 2015.

20. During the period of time from late July 2015 to early August 2015, Plaintiff was also informed by her physician that she was pregnant, and it was explained the pregnancy was the cause of Plaintiff's medical condition's increased symptoms.

21. On August 3, 2015, a letter from Plaintiff's physician was given to the Agency and DFSD Art Bell addressing the significant limits Plaintiff was having on her physical abilities due to her Sjogren's Syndrome and joint issues caused by the medical condition.

22. Due to Plaintiff's inability to physically return to work, she demonstrated a willingness to work off site on multiple occasions including in an email dated August 4, 2015.

23. On August 8, 2015, Plaintiff had another flair up of symptoms of Sjogren's Syndrome and began using a combination intermittent leave under the FMLA and her own annual leave.

24. On September 15, 2015, Plaintiff returned to ORD with a doctor's prescription for

"light duty" due to her pregnancy being deemed high-risk as a result of her Sjogren's Syndrome and poly-arthritis. Plaintiff was unable to take medications for her Sjogren's Syndrome during her high-risk pregnancy, further exacerbating her conditions. Plaintiff's restrictions on her ability to physically travel for work and to return to work on full duties was due to severely swollen joints, dry eyes, and her need at the time to be under close medical care because of her high-risk pregnancy caused by the Sjogren's' Syndrome.

25. Despite the difficulties Plaintiff encountered as a result of her pregnancy and medical condition, and being approved to take leave under the FMLA, Plaintiff continued to make efforts from July 2015 and November 2016, to be physically present at work.

26. Plaintiff physically returned to work for periods of time in from July to September 2015, which included working from July 18, 2015 to August 4, 2015, for approximately 12 shifts or 90 hours, and from September 15, 2015 to September 28, 2015, where she worked for approximately 10 shifts or 75 hours, respectively.

27. In an email dated August 4, 2015, Plaintiff's requested to work from home.

28. However, in response to the August 4, 2015 email, Agency responded that she could not work from home while on FMLA leave, instead of allowing the Plaintiff to change her leave status to allow telework.

29. Agency further received notice of Plaintiff's desire and ability to telework by way of oral conversations and text messages between Plaintiff and management on or around August 4, 2015 and March 15, 2016.

30. On or around September 29, 2015, Plaintiff notified Defendant that she was unable to physically come into work, but was willing to perform work from home.

31. Notably, during this time period other Agency employees at ORD were approved to telework for medical purposes.

32. On September 29, 2015, the Defendant approved Plaintiff's requested combination of sick leave, annual leave, Leave Without Pay (LWOP) and donated leave through the Agency's Voluntary Leave Transfer Program through November 11, 2015.

33. On November 16, 2015, Plaintiff's physician sent a medical note to the Defendant that stated Appellant would need to be out of work until April 2016 (due date 2/25/16).

34. On, November 20, 2015, Plaintiff's physician sent a medical note to the Defendant that stated Appellant would need to be out of work until April 25, 2016 (due date 2/25/16).

35. On, November 30, 2015, Plaintiff's physician sent a medical note to the Defendant that stated Appellant would need to be out of work until April 25, 2016 (due date 2/25/16).

36. On December 16, 2015, Plaintiff received a Letter of Intent responding to her recent submission of new medical information made on November 30, 2015.

37. The Agency's Letter of Intent sought clarification from Plaintiff on her expected date to return to duty and noted that her continued unavailability to return to work could result in her removal.

38. On December 21, 2015, Plaintiff's physician sent a medical note to the Defendant that stated Appellant return to work date of April 25, 2016. ("due date of 2/25/16 under close medical care for 6-8 weeks post pregnancy.").

39. On January 27, 2016, Assistant Federal Security Director for Mission Support (AFSD–MS) Peter Adamson issued Plaintiff a Notice of Proposed Non-Disciplinary Removal for Inability to Maintain a Regular Work Schedule.

40. On January 28, 2016, immediately following the Notice of Proposed Removal, the Agency confiscated Plaintiff's work computer preventing her from performing telework.

41. On February 5, 2016, Plaintiff timely initiated contact with an Agency EEO counselor.

42. On February 10, 2016, Plaintiff's physician sent a medical note to the Defendant that stated Appellant would be able to return to work "full-time" on April 25, 2016.

43. On February 15, 2016, Plaintiff submitted a timely response to the Proposed Removal, in which the Plaintiff again addressed the need for a Reasonable Accommodation to include performing her job remotely until able to return to the workplace. Plaintiff also addressed the personnel action to remove her from service was an inappropriate level of action that is inconsistent with the recommended penalty laid out in the TSA Table of Offenses and Penalties.

44. On March 14, 2016, the Assistant Federal Security Director for Screening (AFSD-S) Tania Vasquez issued a Decision of Notice of Proposed Removal, to remove Plaintiff, "from the position of SV-343-J Scheduling Operations Officer effective March 16, 2016 in order to promote the efficiency of the Federal service," based on the charge of "Inability to Maintain a Regular Work Schedule." Indicating Plaintiff had been unavailable to perform the full range of duties for her position from May 14, 2015 to the present.

45. On March 15, 2016, Plaintiff submitted a reasonable accommodation request via email to the Defendant at reasonableaccommodation@tsa.dhs.gov. From March 15, 2016 to present, Plaintiff has not received any response on the RA request from the Defendant.

46. Despite receiving notice from Plaintiff about the necessity of a reasonable accommodation by way of teleworking, at no time did the Agency offer or discuss the opportunity

to telework with Plaintiff, despite the many correspondences from Plaintiff and her physician and conversations with Plaintiff indicating she was unable to physically travel to work due to high-risk pregnancy associated with her Sjogren's Syndrome.

47. The Agency, specifically by DFSD Art Bell, informed Plaintiff that he did not want the Plaintiff to be physically absent from the workplace.

48. The Defendant never offered any accommodation options to Plaintiff that would allow her to work with her disability during any of the conversations, correspondences, responses to proposed personnel actions, or leave requests made to the Defendant from May 2015 through her termination on March 16, 2016 to present.

49. On May 26, 2018, Plaintiff received the Final Agency Decision (FAD) issued for Agency Case No. HS-TSA-25630-2016, EEOC Case No. 447-2017-00085X dated May 16, 2018, and certificate of service signed May 21, 2018.

## COUNT I

### (Disability Discrimination in Violation of Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq.)

50. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

51. As described above, Defendant took adverse employment actions against Plaintiff because of her disability.

52. Plaintiff was an employee within the meaning of the Rehabilitation Act, as amended.

53. Plaintiff is a qualified individual with a disability within the meaning of the Rehabilitation Act, as amended, because Plaintiff with and without a reasonable accommodation could perform the essential functions of her job with Defendant.

54. Defendant failed to provide Plaintiff with reasonable accommodations and terminated her based on her disability.

55. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## COUNT II

**(Violation of the Rehabilitation Act of 1973, 29 U.S.C. 710 et seq.; for failure to accommodate)**

56. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

57. Defendant failed to provide Plaintiff with reasonable accommodations and terminated her based on her disability.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## COUNT III

**(Sex Discrimination in Violation of the Pregnancy Discrimination Act of 1978 which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*.)**

57. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

58. As described above, Plaintiff was subjected to discrimination with respect to terms, conditions, or privileges of employment, because of her sex by Defendant's conduct constituting violation of Title VII, the Rehabilitation Act as amended, the Pregnancy Act as amended, and the

ADA. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory animus.

59. Defendant failed to provide Plaintiff with reasonable accommodations and terminated her based on her sex (pregnancy).

60. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## COUNT IV

### (Reprisal based on Violation of Rehabilitation Act of 1973, 29 U.S.C. § 710 et seq., and Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)

61. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

62. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by the Rehabilitation Act, including requesting a reasonable accommodation. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff because she engaged in activities protected by Title VII.

63. The stated reasons for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's retaliatory animus for the Plaintiff participating and utilizing protected procedures in violation of the Rehabilitation Act and Title VII.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## COUNT V

**(Reprisal based on Violation of The Family and Medical Leave Act of 1993, 29 USC 2601, et seq.)**

65. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

66. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff for use of entitlements under the FMLA, which resulted in the loss of her employment and pay.

67. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays the Court to:

a. Back pay and benefits

b. Interest on back pay and benefits

c. Compensatory damages for pain and suffering

d. Other non-pecuniary damages

e. Attorney's fees and costs

f. For such other relief, this Court deems just and equitable

**JURY DEMAND**

The Plaintiff requests trial by jury.

Respectfully Submitted,

By:

/s/Samantha Postlewaite
**Samantha Postlewaite**
Federal Bar No.: 0127189
Legal Lion Employment Law Firm, P.L.L.C.
1775 South Kings Avenue
Brandon, FL 33511
Office: (813) 437-0300
Facsimile: (813) 437-0301
Email: Samantha@LLAdvocates.com
Attorney for Plaintiff

**Loretta C. Poston**
Federal Bar No.: 0121898
Legal Lion Employment Law Firm, P.L.L.C.
1775 South Kings Avenue
Brandon, FL 33511
Office: (813) 437-0300
Facsimile: (813) 437-0301
Email: Loretta@LLAdvocates.com
Attorney for Plaintiff

**Shelly B. Kulwin**
Illinois Bar No.: 3125344
Kulwin, Masciopinto & Kulwin, L.L.P.
161 North Clark Street, Suite 2500
Chicago, IL 60601
Office: (312) 641-0300
Facsimile: (312) 855-0350
Email: skulwin@kmklawllp.com
Designated Local Counsel for Plaintiff